355 F.2d 86
 UNITED STATES of America, Plaintiff-Appellant,
v.
HOME LIFE INSURANCE COMPANY, Defendant-Appellee, and
Lowell M. Birrell, Merrie V. Birrell, Petter Birrell, Charlotte Birrell and Max Edelman, as Guardian ad Litem of Lowell Birrell, Jr., Defendants.
 No. 12.
 Docket 29390.
 United States Court of Appeals Second Circuit.
 Argued September 24, 1965.
 Decided January 21, 1966.
 
 Arthur M. Handler, Laurence Vogel, Asst. U. S. Attys., Robert M. Morgenthau, U. S. Atty. for Southern District of New York, for plaintiff-appellant.
 Richard R. Lutz, Townley, Updike, Carter & Rodgers, New York City, for defendant-appellee.
 Before MOORE, SMITH and ANDERSON, Circuit Judges.
 SMITH, Circuit Judge.
 
 
 1
 This is an appeal by the United States from a summary judgment in its favor, claimed to be inadequate in amount, in the United States District Court for the Southern District of New York, Charles H. Tenney, Judge, 233 F.Supp. 921 (S.D. N.Y.1964), in an action under 26 U.S.C. § 7403, to foreclose tax liens against three insurance policies issued by defendant-appellee Home Life Insurance Company on the life of Lowell Birrell, co-defendant. We find no error and affirm the judgment.
 
 
 2
 In 1940 Birrell purchased two life insurance policies. In 1948 the Government's tax lien was perfected, and notice was published in 1949. In 1958 Birrell acquired from a pension fund an existing endowment-life policy. In June, 1958 Birrell defaulted on the premiums on the endowment policy, and in March, 1959 on the other policies. On September 2, 1959 the Government levied on all property of Birrell in the hands of appellee. Thereafter, the United States brought this action under IRC 1954 Sec. 7403 to foreclose its tax liens, and obtained summary judgment for the amount of the cash surrender value of the policies at the date of judgment, but not for the value at the date of levy.
 
 
 3
 When Birrell defaulted on the premiums the policies were converted by nonforfeiture clauses to paid-up endowment and term insurance, respectively.
 
 
 4
 The Government's contention on appeal is that the levy reached the cash surrender value of the term insurance at the date of the levy, relying on United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958). The insurance company argues that the levy did not reach cash surrender value then, and that consequently the measure of recovery in the lien foreclosure suit is based upon cash value at the date of judgment in that suit. The paid-up endowment is not at issue since, unlike the term insurance policies, its cash value has appreciated, and the government accepted the company's tender.
 
 
 5
 In similar cases the First, Third, Fifth and Ninth Circuits have held for the insurance companies. Equitable Life Assurance Society of U. S. v. United States, 331 F.2d 29 (1 Cir. 1964); United States v. Sullivan, 333 F.2d 100 (3 Cir. 1964) (en banc, Hastie, J., dissenting); United States v. Mitchell, 349 F.2d 94 (5 Cir. 1965) (per Moore, J., sitting by designation); Mutual Life Ins. Co. of New York v. United States, 343 F.2d 71 (9 Cir. 1965) (overruling United States v. Salerno, 222 F.Supp. 664 (Nev. 1963), criticized in the District Court here), and see United States v. McWilliams, 234 F.Supp. 117, D.Conn.1964.
 
 
 6
 In Sullivan the order of events was: lien attached; policies purchased; policies borrowed against; levy; default in payment of premiums; and automatic premium loans. The insured also had had the right to surrender the policy for cash surrender value or, in the event of premium default, to have the policies converted to either extended term or participating paid up.
 
 
 7
 As the insured there elected automatic premium loans, these other choices did not become available. [The court, 333 F.2d at 107, note 15, says that if the nonforfeiture (conversion to term or paid up) provisions had become operative, somewhat different questions might have been presented.]
 
 
 8
 The court observed that the lien attached to the delinquent insured's rights in the policy and that "the operative status of an insurance policy is unaffected by the mere attachment of a tax lien." Further, the court said that until an election is made by insured to surrender the policy the insurer has no property of the insured which the levy can reach. The cash surrender value, while subject to a condition precedent, surrender of the policy, is not property, and the insurer is a mere obligor to a broadly based chose in action arising out of an executory contract. While the insured's right to elect is property, and the lien attaches to it, the same is not true as to the insurer, either as to levy or to lien.
 
 
 9
 The Government's argument in United States v. Sullivan, as here, was that United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054 (1958), required a holding in its favor. Bess held that a tax lien reaches insured's right to get cash surrender value, but not the proceeds after the insured's death; and that after death the lien remains in force, because the proceeds include cash surrender value; that that value is not wiped out by the maturing of the policy, because "for this purpose" cash surrender value is a fund held by insurer for insured. The court in Sullivan observed that Bess has nothing to do with what property the insurer has of the insured; the only basis for concluding that Bess would be dispositive was the statement that cash value was a "fund." As to that the court in Sullivan concluded that for the purposes of levy, cash value is not a fund, as long as insured has not surrendered.
 
 
 10
 As to the policy loans, the court noted that because of their obligatory nature they were payments, but that as they were made prior to the lien, the insurer was not liable as to them. Concerning the automatic premium loans, the court concluded that they, too, were payments, or "advances pro tanto" of cash surrender value. They were made after both lien and levy. The court held that at the time of the levy insurer had no present obligation as to cash surrender value and hence it was not subject to levy. Accordingly, it said that the recovery was to be cash value on the date of judgment in the foreclosure suit. Finally, the court observed that the Government, if it wishes at the time of levy to step into the shoes of the insured, should levy on the policy, and sell it in a tax sale, § 6335, IRC 1954, setting cash surrender value as a minimum bid.
 
 
 11
 The doctrine that insurer possesses no property of insured in cash surrender value prior to surrender was firmly imbedded before Bess: United States v. Mass. Mutual Life Ins. Co., 127 F.2d 880 (1 Cir., 1942); United States v. Metropolitan Life Ins. Co., 130 F.2d 149 (2 Cir., 1942); United States v. Penn Mutual Life Ins. Co., 130 F.2d 495, 142 A.L.R. 888 (3 Cir., 1942). Bess does not affect them. Equitable (1 Cir., 1964) reaffirmed Mass. Mutual in the light of Bess; Sullivan (3 Cir., 1964) reaffirmed Penn Mutual.
 
 
 12
 In United States v. Mitchell, supra, the court also observed that cash surrender value is not property in the insurer's hands and that it only becomes property when insured performs the condition precedent. The court recommended, as in Sullivan, that the Government use a distraint sale of the policy; it also observed that a levy does not reach afteracquired property. In United States v. McWilliams, 234 F.Supp. 117, D.Conn. 1964, Judge Blumenfeld followed Sullivan.
 
 
 13
 The levy here reached the rights of the delinquent insured under the policies. Since the policies were in default the non-forfeiture provisions had come into effect, creating a term insurance which itself had cash surrender value. However, while the insured had the power by demand for that value to create a duty in the insurer to pay it over, the insurer had no such duty without demand, and we do not agree that levy alone, while it reached Birrell's entire bundle of rights and powers under the policies, operated as an exercise of the power. Under the varying terms of life policies widely divergent results to insurer, insured and beneficiary can come from the exercise of different options. United States v. Mitchell, supra 349 F.2d at 105; United States v. Sullivan, supra 333 F.2d at 118. Acceptance of a cash surrender value of a policy on one in a terminal illness might result in realization of far less than a sale of all policy rights on foreclosure of the tax lien. Equitable Life Assurance Society of U. S. v. United States, supra 331 F.2d at 36. Such a sale is a method suggested by the courts as best carrying out the purpose of the internal revenue laws and best protective of the rights of insurer and beneficiaries. United States v. Mitchell, supra. However, foreclosure of the lien in this action does reach all the insured's rights in the policies, no redemption from the levy having been had, and the right to demand surrender value as of the date of judgment was then in the United States.
 
 
 14
 The complex and difficult problems posed by these cases might well call for consideration of the subject by the Congress, to provide a fully considered and articulated system for reaching the values of tax-payer insureds' interests in life insurance contracts, with protection to the rights of the other parties to the contracts. Under the general lien and levy provisions now applicable, we agree with the result reached by the 1st, 3rd, 5th and 9th Circuits and the court below. Judgment affirmed.